A. S. BENNETT, APPELLANT, v. NATIONAL UNION FIRE INSURANCE COMPANY, A CORPORATION, RESPONDENT.—80 S. W. (2d) 914.

St. Louis Court of Appeals. Opinion filed April 2, 1935.

*Cullen, Fauntleroy & Edwards* for appellant.

*John L. Harlan* and *Wilton D. Chapman* for respondent.

McCULLEN, J.—This action was brought by appellant, plaintiff, to recover from respondent, defendant, $2000 alleged to be due plaintiff under the terms of a policy of automobile insurance issued by defendant. A trial before the court and a jury resulted in a verdict for defendant. Plaintiff's motion for a new trial was overruled by the court and he has appealed.

Plaintiff's petition alleged that defendant by its policy of insurance dated April 9, 1928, insured plaintiff for the term of one year from that date against direct loss by theft, robbery or pilferage of automobiles from premises at 100-104 West Lockwood Avenue, Webster Groves, Missouri, to the extent of $10,000 and to the extent of $2000 for a period of forty-eight hours at any other location owned, rented, or controlled, wholly or in part, by plaintiff, such period to begin with the commencement of the use of such location by plaintiff.

Plaintiff alleged that on January 5, 1929, he removed a number of automobiles, described in the petition, from 100-104 West Lockwood Avenue, Webster Groves, Missouri, and stored them at 7195 Manchester Avenue, Maplewood, Missouri, and that within forty-

eight hours thereafter, they were taken therefrom by theft, robbery or pilferage by persons to plaintiff unknown, without plaintiff's knowledge and consent, and were converted by said persons to their own use so that they were wholly lost to plaintiff; that said automobiles at that time were of the reasonable value of $4,577.32, and that plaintiff was the sole owner thereof.

The petition alleged that plaintiff gave defendant immediate notice of said loss; that he duly performed all the terms and conditions of the policy which he was obligated to perform, and demanded payment but that defendant refused payments. Plaintiff prayed judgment against defendant for $2000 on the policy, with six per cent interest per annum from the date of demand. He also prayed for ten per cent damages and a reasonable attorney's fee because of defendant's vexatious refusal to pay the claim.

Defendant's amended answer contained a general denial, and for further answer pleaded the following provision of the policy:

"3. Exclusions. This policy does not cover: (c) Loss suffered by the assured in case he voluntarily parts with title to or possession of any property at risk hereunder, whether or not induced so to do by any fraudulent scheme, trick, device or false pretense or otherwise."

Defendant alleged that prior to the date of loss, plaintiff had voluntarily parted with the title to and possession of the property referred to in plaintiff's petition, and that at the time of said loss plaintiff was without title to or possession of said property.

The amended answer pleaded that the policy contained the following provision:

"5. Named Locations. All locations, owned, rented or controlled, wholly or in part by the assured, and used by him as places of storage of automobiles at the date of inception of this policy shall be specified herein, and all other such locations so used by the assured during the currency of this policy shall be reported to this company within forty-eight hours after the commencement of such use. No liability shall attach hereunder at any such location not specified herein, or reported to this company, except for the period of forty-eight hours as referred to herein. The assured shall promptly notify this company of the discontinuance of the use of any locations that have been reported to this company."

In connection with the foregoing policy provision, the amended answer alleged that the only location of assured specified in the policy was 100-104 West Lockwood Avenue, Webster Groves, Missouri, and that plaintiff's loss, if any, was from premises at 7195 Manchester Avenue, Maplewood, Missouri. Defendant specifically denied that any of the automobiles were taken by theft, robbery or pilferage within forty-eight hours after the commencement by plain-

tiff of the use of the premises at 7195 Manchester Avenue, and averred that all or some of said automobiles were stored by plaintiff at said address more than forty-eight hours prior to the loss thereof and more than forty-eight hours after the commencement of the use by plaintiff of said premises, and that plaintiff failed to notify defendant of his change of location or of his use of the last-named premises within forty-eight hours after the commencement of the use thereof.

The amended answer further averred that prior to plaintiff's alleged loss, plaintiff entered into an agreement with one F. A. Reed, doing business as F. A. Reed Sales Company, to further the sale through said Reed of automobiles owned by plaintiff, and that pursuant to said agreement and in December, 1928, and more than forty-eight hours prior to the loss, plaintiff transferred the automobiles, mentioned in his petition, from 100-104 West Lockwood Avenue, Webster Groves, Missouri, to said Reed's premises at said Manchester Avenue address.

Plaintiff's reply was a general denial.

The policy of insurance was introduced in evidence by plaintiff. It covered the period of time alleged in plaintiff's petition and insured plaintiff against loss or damage not to exceed the sum of $10,000 at 100-104 West Lockwood Avenue, Webster Groves, Missouri, and not to exceed the sum of $2000 "for a period of forty-eight hours at any other location owned, rented, or controlled, wholly or in part, by the assured as a place of storage, such period to begin with the commencement of the use of such location by the assured."

The policy contained the following provision concerning notice of loss: "In the event of loss or damage, the assured shall give forthwith notice thereof in writing to this company. . . ."

Plaintiff testified that he had been in the automobile business, dealing in new and used cars, for about ten months at 100-104 West Lockwood Avenue, Webster Groves, Missouri, where he dealt in Pontiac and Oakland cars which he got from the Mississippi Valley Motor Company; that on January 5, 1929, he moved from the Webster Groves address to premises occupied by F. A. Reed at 7195 Manchester Avenue, Maplewood, Missouri, where Reed was operating as F. A. Reed Sales Company; that he, plaintiff, had an arrangement whereby he was to have possession of the building at the Manchester Avenue address for display purposes, and was to split expenses for rent, lights and 'phone; that he did not have any arrangement where Reed was to sell automobiles for him.

Plaintiff further testified that the first property moved consisted of a desk, a chair and new and used automobiles, which were put in the Manchester Avenue address about eleven o'clock on Saturday morning, January 5, 1929. According to plaintiff's testimony, the

cars thus moved were one 1928 Oakland roadster; one 1928 Pontiac coach; two Oakland coaches; one 1927 Oakland coupe; one 1924 Ford touring car, and one 1928 Pontiac coupe. Plaintiff said there were also "a couple of Dodges and an old truck." The total value of the property thus moved was $4713.61.

Plaintiff testified that he left the Manchester Avenue premises that Saturday evening at about 7:20 o'clock; that the automobiles mentioned were then in the front room on the show floor; that he was doing business as Bennett Motor Company, and that he owned the cars described. When plaintiff returned to the premises about eight-thirty or a quater of nine Sunday morning, January 6th, everything was all right and in order. He quit the premises about three o'clock that same afternoon. He returned the next morning, Monday, January 7th, at about eight o'clock and found the place vacant. All the cars described were gone except an old truck and a couple of Dodge automobiles.

Plaintiff further testified that when he left the premises on Sunday, January 6th, the titles and keys to the various automobiles were in a desk which was locked. Upon his return the next morning, Monday, January 7th, he found the lock on the desk had been pried up and broken and the keys to the automobiles as well as the titles thereto were gone. Plaintiff stated that Mr. Reed had a key to the Manchester Avenue premises, but did not have a key to the desk; that Reed did not have any right or authority to go into the desk, nor did Reed have any right or authority to take the automobiles away from the premises; that he had no agreement with Reed whereby Reed might sell any of the automobiles.

Plaintiff further testified that he notified J. L. Robertson, defendant's representative, of the loss by letter under date of January 8, 1929, in which he referred to the fact that he had called Robertson the day before about the loss; that he received an acknowledgment of receipt of the notice and later went to the office of the adjuster for defendant, gave him the amount of the stolen cars and the motor numbers thereof, and made demand for payment of the amount due under the policy; that about the 8th or 10th of February, 1929, defendant denied liability.

Marion Trout, a witness for plaintiff, testified that on January 5, 1929, he saw plaintiff and several of his helpers moving a number of new automobiles into the Manchester Avenue address; that he saw the cars there on Sunday afternoon, January 6th, and that on January 7th he saw the place and it was vacant; that he went into the building and saw that the desk had been pried open. The witness stated that he did not see plaintiff or anyone for him bring any cars into the Manchester Avenue address before January 5, 1929.

Herbert Redmond testified that he had worked for plaintiff about

ten months before January, 1929; that about eleven o'clock on the morning of January 5, 1929, he and three other men started taking the automobiles from the Webster Groves premises to the Manchester Avenue premises; that they worked until about three-thirty in the afternoon of that day; that he went back to the Manchester Avenue premises on Monday and that the automobiles which he had helped to drive to said premises were gone; that the desk in the front part of the office was broken open; that the lock on the desk had been in good condition when he took the desk to the new location on January 5, 1929.

Rolla James and Harold Breeden corroborated Redmond's testimony with respect to the moving of the cars from the old to the new location.

Anthony R. Rubano of 7212 Manchester Avenue, testified that he saw plaintiff driving automobiles into the Manchester Avenue premises on January 5, 1929; that he did not see plaintiff or anyone for him bring any automobiles to that place before that date. The witness said he knew F. A. Reed; that he saw the Manchester Avenue premises on Monday, January 7, 1929, and the place was empty; that he did not see Reed from that time on.

Herbert J. Jackson, a salesman employed by plaintiff, testified that he reported about eleven o'clock on the morning cars were moved to the new building and assisted in moving some of them; that he reported the next morning for Sunday duty at the new address and the cars were all there on the floor and a roll top desk was in the premises; that the keys of the automobiles were kept in the desk on that Sunday; that he went to the Manchester Avenue premises the next day, Monday, at about eight-thirty A. M. and that the building was then empty except for two cars in the back; that the desk had been pried open and the lock on it had been smashed, and that the automobile keys and papers were gone.

Thomas J. English, an adjuster for defendant, testified that he got into the case about the 10th or 12th of January, 1929; that he called on plaintiff and that plaintiff informed him that in order to reduce his overhead he had moved in with Mr. Reed at Maplewood where they would share the premises and expenses equally; that plaintiff told him he had an arrangement with Reed whereby he was to split the commission on all cars sold by Reed for plaintiff. The witness further testified that plaintiff advised him that he, plaintiff, had arranged for Reed to have access to the titles so that in case Reed sold a car he could transfer title, and that he, plaintiff, started to move on January 4, 1929. English further testified that upon inquiry, which he made of the Secretary of State's office, he learned that some of the automobiles in question had been registered in that office.

In connection with the testimony of English, defendant introduced in evidence Exhibits 1 to 9, inclusive, which were photostatic copies of certificates of title in the usual form issued by the Secretary of State showing that some of the automobiles alleged to have been taken by theft from the Manchester Avenue premises were acquired from F. A. Reed Sales Company on and before January 5, 1929.

English further testified that he had a conversation with plaintiff about January 12th or 15th, 1929, in which he mentioned to plaintiff that one of the automobiles in question "had turned up sold" and that plaintiff remarked "He just wondered how many more would turn up as sold by this man Reed; that he was sorry he had turned the titles over to him."

John Norman, connected with the Fisk Rubber Company, testified for defendant that on January 2, 1929, he went to the Manchester Avenue premises and saw there about five or six Oakland and Pontiac automobiles on the floor; that Mr. Reed gave him to understand that he had taken a subdistributorshop from some agency in Webster Groves; that he went back to the premises on the Saturday following January 2, 1929, at about ten o'clock in the morning, and that Reed was tearing paper from the running board of a Pontiac coach or sedan and cleaning it up; that when he went back, on the Monday following, Reed was gone and he was informed by people around the neighborhood that Reed had left Sunday night "with everything in the place."

E. A. Hatfield, president of the Mississippi Valley Motor Company, testified for defendant that his company did not at any time distribute any new Pontiac or Oakland cars to F. A. Reed or to F. A. Reed Sales Company.

W. J. McDonnell of the Mississippi Valley Motor Company corroborated the testimony of E. A. Hatfield of that company to the effect that the company never sold any new Oaklands or Pontiacs to F. A. Reed or to F. A. Reed Sales Company.

Archie Kerr testified for defendant that in December, 1928, and January, 1929, he was a deputy constable of Kirkwood and that on Friday, January 4, 1929, he called at the Manchester Avenue premises in connection with a deal to sell Reed some radios; that on that date Reed's place of business was filled with new cars and one used car; that there were no cars being moved in or out at that time.

Mrs. Eleana Calvert testified on behalf of defendant that on January 5, 1929, she and her husband bought an Oakland coupe from the F. A. Reed Sales Company at the Manchester Avenue address; that she had been in the premises a couple of days before that date and the automobile which she purchased on January 5, 1929, was then shown to her. On cross-examination this witness testified that she paid cash for the car and took the car right home; that it

might have been on Sunday afternoon but she thought it was Saturday.

Lola Scholz testified for defendant that she purchased an Oakland sedan from F. A. Reed Sales Company at the Manchester Avenue address on Saturday; that she went in there to buy a radio and wound up by buying an automobile; that she did not buy it from plaintiff but believed Reed was the salesman; that she paid $850 cash for the automobile.

Plaintiff gave testimony in rebuttal to the effect that the witnesses who testified that the automobiles had been in the Manchester Avenue premises prior to January 5, 1929, were mistaken, and that statements made in the certificates of title were incorrect. He denied that he had the conversation concerning which defendant's witness English testified. He also testified that he did not state to any of the witnesses that he had the cars on consignment or that he had transferred title to Reed, and stated that he did not tell any of the witnesses that he had transferred possession of the cars to Reed.

Plaintiff contends that the court committed reversible error in giving Instruction No. 4 on behalf of defendant. The instruction is as follows:

"The court instructs the jury that unless you find and believe from the evidence that each and every one of the automobiles belonging to plaintiff, if you so find, and referred to in the evidence as having been placed or stored in the premises on Manchester Avenue in Maplewood, Missouri, and as having been taken from said premises by theft, robbery or pilferage, were so placed or stored within forty-eight hours prior to the time plaintiff notified the defendant, its agents, servants or employees, of the theft, then your verdict must be for the defendant."

It is urged by plaintiff that nowhere in the pleadings or in the evidence and nowhere in the policy is there any possible theory to justify the giving of the instruction complained of, and that it injects a false issue into the case.

The policy insured plaintiff to the extent of $10,000 against loss occurring by theft at the Webster Groves address, which was the "specified" location, but only to the extent of $2000 and only for a period of forty-eight hours "at any other location," such period of forty-eight hours to begin "with the commencement of the use of such location by the assured." The policy further provided that no liability should attach thereunder at the new location unless such new location was reported to the defendant, "except for the period of forty-eight hours as referred to herein."

It is clear that there was no issue either in the pleadings or the evidence as to the time notice of the theft was required to be given, or was given, by plaintiff to defendant. Plaintiff's claim was not

based upon the theory that he had given notice of the *use* of the new location, and that coverage had been extended by virtue of such notice, but was based upon the theory that the period of forty-eight hours of coverage provided for in the policy "at any other location" had not expired at the time the loss occurred at the new location. On the other hand, defendant did not allege and did not even attempt to prove that plaintiff failed to give notice of the theft in accordance with the terms of the policy, but contended that the loss occurred after the period of forty-eight hours beginning with the commencement of the *use* of the new location by plaintiff had expired, and that the insurance had, therefore, wholly ceased to cover plaintiff at the new location at the time the theft or loss occurred. The instruction was not only erroneous in that it submitted to the jury extraneous matter concerning which there was no issue in the pleadings and no evidence adduced, but it was prejudicial to plaintiff's rights, for if followed by the jury it prevented plaintiff from having the jury pass on the real issue involved. It told the jury that unless they found the automobiles were stored at the new location within forty-eight hours prior to the *time* plaintiff *notified* defendant of the *theft,* then the verdict must be for defendant. This could not be other than misleading, because under the pleadings, the evidence and the policy, the question in issue on this phase of the case was not as to the *time* plaintiff *notified* defendant of the *theft,* but whether the theft, if any, occurred within the forty-eight hour period after the commencement of the *use* of the new premises by plaintiff.

The rule is firmly established in this State that the issues made by the pleadings in a case are the only ones to be instructed on, and where an instruction goes beyond and broadens the issues made by the pleadings, it is held to be error. [Gandy v. St. Louis-San Francisco Ry. Co., 329 Mo. 459, 467, 44 S. W. (2d) 634, 637, 638; State ex rel. Central Coal & Coke Co. v. Ellison et al., 270 Mo. 645, 653, 654, 195 S. W. 722, 723, 724.]

The instruction complained of is erroneous for another reason. Plaintiff's Instruction No. 1, in the part thereof covering the question of notice of the theft, told the jury that if they found that plaintiff notified defendant "within a reasonable time" after the theft, and they also found the other facts hypothesized therein then their verdict should be for plaintiff. Defendant's Instruction No. 4 told the jury that unless they found the automobiles were stored "within forty-eight hours prior to the time that plaintiff notified defendant . . . of the theft," the verdict should be for defendant. Defendant's instruction was thus clearly in conflict with plaintiff's instruction on this point and constituted error. [State ex rel. Long v. Ellison et al., 272 Mo. 571, 583, et seq., 199 S. W. 984, 988, 989.]

Plaintiff further complains that the court erred in giving defendant's Instruction No. 5. The instruction is as follows:

"The court instructs the jury that the burden of proof is upon the plaintiff to establish, by the greater weight or preponderance of the evidence, the facts necessary to a verdict in his favor under these instructions."

One of the defenses pleaded by defendant was that plaintiff had voluntarily parted with the title to and possession of the automobiles prior to the time they were stolen, and that the loss was, therefore, not covered by the policy but on the contrary was specifically excluded by virtue of Provision 3 entitled "Exclusions," which provided:

"This policy does not cover: . . . (c) Loss suffered by the assured in case he voluntarily parts with title to or possession of any property at risk hereunder, whether or not induced so to do by any fraudulent scheme, trick, device, or false pretense or otherwise."

The pleading of the above clause by defendant constituted an affirmative defense, and the law is well settled that where an affirmative defense is relied on to defeat a plaintiff's cause of action, the burden of proving such defense rests upon the one alleging it. The general rule is clearly stated in a work on insurance as follows:

"If a risk is excepted by the terms of a policy which insured against other perils or hazards, loss from such a risk constitutes a defense which the insurer may urge, since it has not assumed the same, and from this it follows, at least as a general rule, that an insurer seeking to defeat a claim because of an exception or limitation in the policy has the burden of proving the loss, or a part thereof, within the purview of the exception or limitation set up; also, that it was within the time the exception was limited. In other words, the burden of proving affirmative defenses in the nature of exceptions which relieve the insurer from liability is on the insurer." [8 Couch Cyc. of Insurance Law, pp. 7168, 7169, 7170, sec. 2217.]

In the case at bar defendant having pleaded an exception in the policy under which it claimed that it was relieved from liability, the burden was on defendant to establish such defense. This rule is well established and has been applied in various kinds of insurance cases in this State, and we are of the opinion that it clearly applies to the case at bar under the evidence. [Stephens v. Fire Assn., 139 Mo. App. 369, 374, 375, 123 S. W. 63; Patten v. Springfield Fire & Marine Ins. Co. (Mo. App.), 11 S. W. (2d) 1101, 1105; Walton v. Phoenix Ins. Co., 162 Mo. App. 316, 329, 141 S. W. 1138; Turner v. Benevolent Society, 224 Mo. App. 463, 466, 28 S. W. (2d) 125, 126; Heinrichs v. Royal Neighbors of America (Mo. App.), 292 S. W. 1054, 1059.]

Defendant herein alleged, and produced evidence to prove, as we have shown, that plaintiff had voluntarily parted with title to and possession of the automobiles in question before the theft thereof occurred. Notwithstanding such affirmative defense, defendant's Instruction No. 5 told the jury without any qualification that the burden of proof was on plaintiff to establish the facts necessary to a verdict in his favor "under these instructions." One of the instructions referred to as "these instructions" was defendant's Instruction No. 4 and another was plaintiff's Instruction No. 1 in which reference was made to defendant's affirmative defenses. The instruction complained of was, therefore, clearly erroneous for the reason that the effect of giving it without any qualification, limitation or reservation as to defendant's affirmative defenses was to place upon plaintiff the burden of disproving defendant's affirmative defenses, whereas the burden of proving such defenses rested on defendant.

The jury having found in favor of defendant and the instruction having been given at defendant's request, we hold that the court committed reversible error in giving it. [Brown v. St. Louis-San Francisco Ry. Co. (Mo. App.), 281 S. W. 452, 455, 456.]

Defendant argues that even though the instructions complained of be found erroneous, the verdict was for the right party and should not be disturbed on appeal. A number of cases are cited to support this contention. It is sufficient to say on this point that the cases cited by defendant do declare the rule to be that if upon the pleadings and the undisputed facts the judgment in a case is for the right party, there can be no reversal no matter what error occurred at the trial.

It is obvious, however, from the review of the evidence which we have presented in the fore part of this opinion that the rule mentioned can have no application to the facts in the case at bar. There was a decidedly sharp conflict in the evidence in this case as to whether or not plaintiff had parted with the title to and possession of the automobiles in question prior to the time they were taken by the alleged theft. There was also a decided conflict in the evidence as to whether or not the theft or loss of the automobiles occurred within the forty-eight hour period of coverage provided by the policy after the commencement of the use of the new location by plaintiff. In such a state of the record, this court cannot say as a matter of law that the verdict was for the right party. That is a matter within the province of the jury to decide.

For the errors in giving the instructions referred to, the judgment is reversed and the cause remanded for a new trial. *Hostetter, P. J.*, and *Becker, J.*, concur.