Russell L. SMITH, Doing Business as Lee Bottle Gas and Heating Company, Plaintiff-Respondent,

v.

M. F. A. MUTUAL INSURANCE COMPANY, A Corporation, Defendant-Appellant.

No. 22982.

Kansas City Court of Appeals. Missouri.

June 9, 1960.

Motion for Rehearing or Transfer to Supreme Court Denied June 29, 1960.

Strop & Strop, St. Joseph, for appellant.

Dale & Potter, St. Joseph, for respondent.

BROADDUS, Judge.

This is an action based upon an insurance policy. From a judgment in favor of plaintiff for the sum of $3,580, defendant appealed.

On February 25, 1958, defendant M. F. A. Mutual Insurance Company, issued to plaintiff its insurance policy covering plaintiff's 1954 1 H C truck until August 25, 1958. The policy contained the following provision:

"MFA Mutual *will pay for direct and accidental loss of or* damage to the owned automobile except loss caused by collision between it and another object, or by its upset, but including breakage of glass and loss *caused* by missiles, falling objects, *fire,* theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion."

It also contained the next quoted provision, to-wit:

"Bottled Gas.

"In consideration of the premium charged, it is agreed that the insurance provided in this policy *does not cover nor include any loss,* damages, injuries or death *caused* by bottled or compressed gas, whether known as Butane or Propane gas or by any other name, while the same is in or upon or being transported or conveyed in or by the insured vehicle or while same is being

loaded or unloaded therein or there-from."

There is no dispute as to the facts. The truck involved was propelled by propane gas and was adapted solely as a bulk propane gas truck. Attached to the truck was a metal tank having a capacity of 1212 gallons.

On August 13, 1958, plaintiff took the truck to a garage in St. Joseph operated by Mr. Lloyd Roberts. Mr. Roberts, in plaintiff's presence, "checked all connections" and, as a result of that inspection, found that "there were no leaks". Between five and six o'clock that afternoon the truck was driven from the garage to plaintiff's office located at 66½ Railroad Avenue in St. Joseph. A photograph offered in evidence shows that the office is in the front part of plaintiff's house. The next morning between nine and ten o'clock, the truck was taken to "Car Town" on 169 Highway and 841 gallons of Propane gas were put in the tank. Plaintiff testified that at that time "there were no leaks." Thereupon plaintiff's son drove the truck away and: "He started up the Belt Highway to go to Industrial City to deliver some gas and he got up there at about Pacific Street and the truck started smoking and the solenoid valve burned out of it." Plaintiff stated that the solenoid valve on the truck was located beneath the vaporizer, which in turn "is on the motor" at the "front end of the truck;" that he "went and bought a new one (valve) and put it on." This was done between eleven and twelve o'clock. The truck was then taken directly to plaintiff's home and parked.

At about 4:30 p. m. on the same day (August 14, 1958) a loud roaring noise was heard coming from the truck and a white vapor surrounded it immediately before it became ignited. The vapor came from the liquid propane gas with which the truck was, as we have stated, then loaded. The vapor was ignited by fire but the source of the fire was not directly shown, except that it came from the front part of the truck, or from plaintiff's office or shed. Propane gas, in liquid form, will not burn but, upon contact with air, will vaporize and the vapor is then highly inflammable and will explode and burn if it comes in contact with a spark or flame. This vapor exploded with a "poof" and burned an area of sixty feet around the truck, entirely consuming the truck.

The truck was equipped with a "popoff valve" which was located at the top of the tank and at the back end of the truck. Plaintiff testified that the purpose of the "popoff valve" is to release any excess pressure in the tank. When asked: "Is there a certain temperature at which this popoff valve pops off?" he answered: "The temperature don't get hot enough around here to pop one off. They are set at 250 pounds of pressure." Later on he was asked: "Have you testified as to the heat within the tank in order to cause that popoff valve to go off?" His answer was: "The gas had to get heated up enough to make 250 pounds of pressure before it will pop off." The testimony was that during the period that the truck burned this popoff valve opened from time to time.

Defendant offered no evidence. It admitted that the value of the truck was $3,580; that request for payment was made and refused. The trial court held defendant liable. Both parties here contend that the policy is clear and unambiguous. Plaintiff says it clearly provides coverage of loss by fire and that there is no dispute, under the evidence, but that the loss so occurred. Defendant says the policy clearly exempts from coverage loss caused by propane gas and that, without question, the loss was caused by propane gas.

Defendant agreed to pay for loss or damage "caused" by fire; but it provided in the policy that it would not pay for any loss caused by propane gas.

There is no question but that, under the first quoted provision of the policy defendant would be liable for the loss, were the second provision not included in the policy,

as the truck was consumed by flames. True, the flames *arose* from the vaporized propane gas, but they were ignited by fire "from the front part of the truck or the office."

It is conceded that propane gas will not burn in its liquid state, nor in its gaseous state either, unless it comes into contact with fire. How, then could this loss have been "caused" by bottled or compressed gas? Fire came into contact with the gas, converted the gas itself into fire. While there is no direct evidence as to what *caused* the fire, it was not caused by bottled or propane gas.

■ The burden of proof on the issue of the cause of the fire is not on plaintiff. The defendant has that burden, having pleaded the bottle gas exemption clause as an affirmative defense.

"It is well established that an insurance company defending on the ground of non-coverage and relying upon an exemption or exemption clause in the policy has the burden of proving the facts upon which such defense is based by a preponderance of the evidence." 29A Am.Jur. 985.

■ Every element of plaintiff's case has been established, as a matter of law, by proof in the form of judicial admissions and from the pleadings, because: (1) defendant by its answer admitted the loss *by fire* during the term of the policy, due notice of loss, plaintiff's demand for payment and its refusal, and (2) defendant made record admission, before trial, that plaintiff's loss was in the amount claimed in the petition.

Therefore, plaintiff had made a *prima facie* case, submissible to the jury without any further evidence, and sufficient to support a judgment.

■ Thereafter, the burden was on defendant to introduce evidence in support of its affirmative defense under the bottle gas clause, and to show that propane gas *caused* the fire. Defendant never sustained that

burden of proof as it introduced no evidence. The only evidence in the case was introduced by and on behalf of plaintiff which established his *prima facie* right to recover. Plaintiff's evidence contains no fact or circumstance from which any inference can be drawn that propane gas caused the fire.

In the absence of such evidence, the court was justified in directing judgment for plaintiff. Stephens v. Fire Ins. Co., 139 Mo. App. 369, 123 S.W. 63.

In the Stephens case plaintiff's furniture was destroyed by a fire and an explosion. In its answer the defendant insurance company set up the exemption clause in the policy that "this company shall not be liable for loss caused by explosion of any kind unless fire ensues and in that event for the damage by fire only."

The case was tried by both parties upon the same theory "that if the fire preceded the explosion, and the explosion was an incident of the fire and was caused by it, the insured could recover the fire damage only. The evidence tended to show—and the fact was practically admitted by both litigants—that a severe explosion happened in the building, with probabilities that it occurred from natural gas in the basement directly under the apartment occupied by the plaintiff. The plaintiff offered no evidence tending to separate the damage done by the explosion from that done by the fire, and his recovery, so far as shown, is a general damage caused both by the explosion and the fire. The evidence clearly shows that a portion of the damage suffered resulted from the explosion, so that in this case, the defendant is not liable for any explosion damage unless the explosion occasioning such damage was preceded by a fire which caused it. The contested point in this case is, therefore, one of evidence—whether the explosion which wrecked and damaged plaintiff's furniture was preceded by a fire which caused it; for if it was not preceded by a fire, then the defendant is not liable for any damage, as the plaintiff offered no

evidence of the amount of his damage done by fire subsequent to the explosion and there would be nothing upon which to base a verdict against the defendant."

The court referred to the settled rule of law that when the assured has shown the execution of the contract, also the loss together with the amount thereof, the burden is on the insurer to prove that the loss is within the exception stated in the policy. The opinion said:

"The Superintendent of the Kansas Natural Gas Company testified that he had been familiar with the gas business since 1887. He was asked the following questions: 'Q. Will natural gas explode unless it comes in contact with flame previous? A. No, sir. Q. Then there must be a flame before there can be an explosion? A. Yes, sir.'

"The evidence in this case comprehensively examined—both the evidence for the appellant and the respondent—shows that no person was present in the basement where the fire occurred at and prior to the time of the explosion, and no person testified to having personal knowledge as to whether the fire preceded the explosion or the explosion preceded the fire. * * *

"A fair survey of all the facts relating to the fire and the explosion do not seem to point in the direction of or converge upon a common center in such a way as to lead to a satisfactory conclusion that the explosion preceded the fire. * * * The burden of proof, as we have seen, resting upon the defendant, requires him to show by a preponderance of the evidence that the explosion did precede the fire, and without such evidence, the plaintiff's *prima facie* case prevails. * * * The defendant in this case held the laboring oar, and the law requires it to make headway against the plaintiff's *prima facie* case. And when we consider the nature of the evidence offered in the case, and give it all the legitimate inferences that can reasonably be drawn, we have no hesitation in holding that the judgment was for the right

party." And likewise in the instant case defendant failed to sustain its burden of showing that plaintiff's loss was within the exception stated in the policy.

The case of Frisbie v. Fidelity & Casualty Co., 133 Mo.App. 30, 112 S.W. 1024, involved a policy on plate glass insurance which exempted the company from liability for loss happening by or in consequence of *fire*. The glass was broken by the dynamiting of plaintiff's building by the town authorities to prevent the spread of fire which began elsewhere and burned up to the dynamited building. This court held that the fire was the proximate cause of the loss so as to prevent a recovery under the policy.

In the case of Cova v. Bankers & Shippers Insurance Company, Mo.App., 100 S.W.2d 23 plaintiff's motor truck was insured against loss by collision by one insurance company, and against loss by fire by another. The truck was involved in a collision causing damage of $275. Immediately, it caught fire and burned, resulting in a total loss of more than $1,000. It was held that the company issuing the collision policy was liable for the entire loss. The court said, 100 S.W.2d at page 29: "Both reason and precedent would warrant the present application of the rule that, where the peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and the final injury, produce the final result for which the insured seeks to recover under his policy, then the peril insured against will be regarded as the proximate cause of the entire loss * * * within the limits fixed by the policy." (Citing cases)

Under the general insuring clause of the policy here involved, loss by *fire* was covered. The gas was ignited by *fire,* and *fire* consumed the truck. Fire was the proximate cause of the loss.

Defendant relies mainly upon the case of Insurance Company v. Express Company, 95 U.S. 227, 24 L.Ed. 428. There is a

clear distinction between it and the instant case. In that case the condition contained in the two policies sued on was: "It is a further condition of this insurance, that no loss is to be paid in case of collision, except fire ensue, and then only for the loss and damage by fire. And that no loss is to be paid *arising* from petroleum or other explosive oils." (Italics ours)

As is to be seen, the exclusion clause in those policies used the words "*arising from*" whereas in the "Bottle Gas" endorsement in the policy in the case at bar, the words "*caused by*" were used. In our case, this language "caused by" relates back to the initial cause, which was the antecedent fire, whereas in the cited case words of different meaning are employed—"arising from"—which are broad enough to embrace and relate to the intermediate agency—petroleum. Black's Law Dictionary defines "cause" as follows: "That which produces an effect; whatever moves, impels, or leads. The origin or foundation of a thing * * *." Webster's New International Dictionary defines "cause" as being the necessary antecedent of an effect; that which determines the condition or existence of a thing especially that which determines its change from one form to another. Our Supreme Court has held that the words used in an insurance policy "arising out of * * *" "are much broader than the words 'caused by'". Schmidt v. Utilities Ins. Co., 353 Mo. 213, 218, 219, 182 S.W.2d 181, 183.

The judgment should be affirmed. It is so ordered.

CROSS, J., concurs.

HUNTER, P. J., dissents in separate opinion.

HUNTER, Presiding Judge (dissenting).

I am unable to agree with the result reached in the majority opinion. The policy exempts from its *fire* coverage "dam-ages * * * caused by * * * propane gas." Surely the plain meaning of this language is that if propane gas is the efficient cause of the damage the exemption applies. Thus, fire damage if caused by propane gas ignited by an incidental spark which in and of itself would not have damaged the truck is excluded from coverage for under such circumstances propane gas is the efficient cause of the damage.

The truck customarily carried large quantities of propane gas and also operated on propane gas. This the parties to the insurance contract knew. It was this extra hazard of damages from the propane gas, whether in the form of burning propane, exploding propane, or liquid propane if the propane was the real or efficient cause of those damages, that the parties must have had in mind when the exemption and the policy premium were agreed upon.

As to the pleadings, defendant's answer quotes the exemption clause of the endorsement and then provides, "defendant further states that the loss, damage or destruction of plaintiff's truck, as described in plaintiff's petition, was caused by bottled gas within the meaning of said endorsement * * * and by the terms of said endorsement coverage was excluded for any loss or damage to plaintiff's truck, as in said plaintiff's petition alleged." This squarely raised defendant's contention of no liability by reason of the exception "caused * * * by propane gas". Defendant has never waived this contention and it is not waived by defendant's statement that the destruction of the truck was caused by propane gas.

Plaintiff did not attempt to stand on the pleadings, but proceeded to put on evidence as to the issue of fact raised by the pleadings; namely, was the fire loss which plaintiff suffered caused by propane gas.

According to the evidence on this ultimate, determinative and disputed question of fact the first unusual condition noted was that the parked truck was enveloped in a cloud of white vapor gas which looked like

fog and was seeping through a nearby hedge fence. No witness saw, knew or stated the origin or cause of the ignition of the gas. It was described as going up, as a big "poof". The front tires on the truck were not damaged to any great extent.

The facts in evidence are such as to show clearly that the vehicle was not damaged by any antecedent, hostile or independent fire.

There was expert testimony that liquid propane must be turned into gas before it will ignite—after it becomes gas it is combustible and in this state a spark will ignite it.

There was evidence that this particular truck had been overhauled the day before the fire; that the tank did not leak; that the pop-off valve would not open unless a pressure of 250 pounds was developed and that even in the form of gas a spark or fire was required to ignite propane gas. Regardless of the opinion evidence that the tank did not leak and that without heat generated by fire the gas could not escape through the pop-off valve, the fact remains that the only witness to the incident testified that when he first saw the truck it was enveloped by a foggy cloud of propane gas and that at that time no fire or spark was observed or visible. Any opinion that there was no leak and inferentially that this could not happen, in the face of positive evidence that it did happen, is of doubtful credibility, contrary to the evidence, and certainly not determinative as a matter of law.

There was also evidence that on the day before when the truck was empty, a short circuit in the engine wiring had burned out the solenoid valve. This damaged part had been replaced. It is noteworthy that no fire resulted in the empty truck from that short circuit or from the spark, if any there was therefrom. Plaintiff seemingly theorizes that the same sort of short circuit might have ignited the gas and caused the fire. Even if such speculation is indulged was the damage caused by propane gas or by an independent hostile fire? Or,

differently stated would such an incidental spark in and of itself in the absence of any propane gas have caused any damage to the truck? If not, and if it ignited the propane gas which in turn destroyed the truck then propane gas was the efficient cause of the damage, and the loss was within the terms of the exemption clause.

If one would speculate, since this white gas was spread around the truck and was continuing to spread away from it for some distance, the gas might have become ignited from someone smoking a cigarette "in the office" and the resulting burning propane gas have destroyed the truck. Clearly, propane gas would be the efficient cause of the damage to the truck, and exempted from the coverage of the policy.

As stated, the only witness to the complete occurrence testified in effect that he first saw only the vapor. He did not then nor did anyone else at that time see any fire. It was shortly thereafter that the gas went up with a poof. This is negative, but acceptable, evidence that there was no antecedent, hostile or independent fire. Taken in connection with the other circumstances it is evidence from which a jury could find that the damage to the truck was caused by propane gas.

Only if the evidence is so overwhelming one way that reasonable minds cannot differ, will a court, trial or appellate, enter a judgment as a matter of law. In the explosion cases where similar questions and on indefinite facts are presented, the issue has many times been ruled one for the trier of the facts. Bennett v. National Union Fire Ins. Co., 230 Mo.App. 939, 80 S.W.2d 914; Bilsky et al. v. Sun Ins. Office, Limited, of London, England, 231 Mo.App. 1072, 84 S.W.2d 171. The Supreme Court of the United States in Insurance Company v. Express Co., 95 U.S. 227, 24 L.Ed. 428, went so far as to direct a verdict and enter judgment for the defendant. In this case too, the Supreme Court of the United States held specifically that the phrases "caused by" and "arising from" are synonymous.

In the final analysis, it is immaterial that plaintiff is the one who adduced all the testimony which included the observations of the only witness to the entire incident. That evidence was before the jury and neither it nor the pleadings were such as to justify a directed verdict for plaintiff.

In my opinion, shared by Judge MAUGHMER, C., the utmost to which plaintiff is entitled is a submission to the jury, and the trial court committed reversible error in directing a verdict for plaintiff. The judgment should be reversed and the cause remanded.