SARAH BILSKY AND PRUDENTIAL INSURANCE COMPANY OF AMERICA, A CORPORATION, (PLAINTIFFS) APPELLANTS, v. SUN INSURANCE OFFICE, LIMITED, A CORPORATION, (DEFENDANT) RESPONDENT.— 84 S. W. (2d) 171.

St. Louis Court of Appeals.   Opinion filed July 2, 1935.

Appellant's Motion for Rehearing Overruled July 16, 1935.

Petition for Writ of Certiorari Denied by Supreme Court October 18, 1935.

*Cullen, Fauntleroy & Edwards, Clem Storckman, Cullen Coil, Rodgers & Buffington, Wendell Berry* and *Williams, Nelson & English* for appellants.

*Taylor, Chasnoff & Willson, Fry, Hollingsworth & Francis, J. H. Cunningham, Jr.,* and *Lewis H. Carstarphen* for respondent.

BENNICK, C.—This is an action upon a policy of fire insurance issued by defendant, Sun Insurance Office, Limited, of London, England, upon the property known as 4 Northcote Avenue, located in York Village, St. Louis County, Missouri, the record title to which was in plaintiff Sarah Bilsky, subject to an outstanding deed of trust for $7500 theretofore executed in favor of her coplaintiff, Prudential Insurance Company of America, which joins with her in the prosecution of the action as a party in interest under and by virtue of the standard loss payable clause in the policy.

Upon a trial in the Circuit Court of Audrain County which plaintiffs selected as the venue for their action, a verdict of ten jurors was returned in favor of defendant upon the issues joined. Plaintiffs' appeal to this court has followed in the usual course.

The policy was one insuring the property against all direct loss or damage by fire to an amount not exceeding $2250, and was one of five similar policies providing insurance in the aggregate amount of $12,000. Three of the policies, in addition to the one in suit, with a combined insurance coverage of $8500, contained the standard mortgage clause making the loss or damage under the policies payable to the Prudential Insurance Company of America as its interest might appear, and providing further that the insurance, as to the interest of the mortgagee only therein, should not be invalidated by any act or neglect of the mortgagor or owner of the property insured.

The property was a one and a half story bungalow, built of tile plastered on the outside with white cement stucco, and located in a newly built up residential district given over to modern and attractive homes of considerable value in most instances. The property was purchased by plaintiff Sarah Bilsky in the summer of 1930 for about $9000, and thereafter she and her husband, Dr. Nathan Bilsky, spent some additional money in repairs and decorations, and on August 13, 1930, borrowed the sum of $7500 from the Prudential Insurance Company of America as has been heretofore pointed out, Dr. Bilsky joining with his wife in the execution of the note, the payment of which was secured by the deed of trust upon the property. At the time of the loss, which occurred on June 11, 1931, no part of the principal of the note had matured, and the one accruing semiannual interest payment had been duly made.

The fire was discovered about ten o'clock at night, and an explosion concededly added to, if it in fact did not bring about, the

admittedly total destruction and demolition of the building as such. Suffice it to say that the issue under the pleadings determinative of defendant's liability under its policy was whether or not the explosion which wrecked the building had been preceded by a hostile fire, plaintiffs' theory being that a hostile fire preceded and produced the explosion, in which event defendant would be liable both for the loss caused by the fire as well as for that caused by the explosion occurring incidental to the fire, while defendant's theory was that the hostile fire followed and resulted from the explosion which had of itself demolished and destroyed the building as such, so that the insurance did not thereafter attach to the materials of which the building had been constructed, even though a large portion of such materials was damaged by the ensuing fire.

The issue arises, of course, upon defendant's pleading in its answer of the usual exception to liability contained in the policy, the same exempting and relieving the company from liability for loss caused directly or indirectly by explosion of any kind unless fire ensues, and in that event for the damage by fire only.

It is to be observed from what we have said regarding the issue drawn between the parties that they are more in disagreement about the facts than they are about the underlying law of the case, though they have their differences about the law too, as we shall shortly have occasion to point out.

Inasmuch as the policy in suit contained the usual clause excluding liability for loss caused by explosion, and inasmuch as the building was totally and completely wrecked and demolished by the force of the explosion so that it could no longer be identified as the subject of the insurance, it seems to be agreed that defendant is not to be held liable under its policy unless the explosion was preceded by a hostile fire, by which is meant a fire hostile to the building or its contents, without regard to the identity or interest of the person, if any, who may have actually started the fire, or who may have set up the instrumentalities which made it possible for it to start. The parties are not in complete accord in the presentation of the case in this court as to the character or extent of the fire which could properly be denominated hostile or wrongful, but they all recognize that under the policy in question there must have been such a fire in existence before defendant may be called upon to respond to the measure of its obligation under its policy. This for the reason that if the explosion was caused purely by what would be regarded in law as a friendly or innocent fire, that is, by a fire being employed for its usual purposes and confined within its usual and intended limits (Cabbell v. Milwaukee Mechanics' Ins. Co., 218 Mo. App. 31, 260 S. W. 490), or by something in the nature of a fire but of itself possessing no potential power of destruction, then

the explosion fell within the exception made in the policy, and there could be no liability on defendant's part, the whole loss being attributable under such circumstances to the disastrous consequences of the explosion. [Stephens v. The Fire Assn. of Philadelphia, 139 Mo. App. 369, 123 S. W. 63; Renshaw v. The Missouri State Mut. Fire and Marine Ins. Co., 103 Mo. 595, 15 S. W. 945; Exchange Bank of Novinger v. Iowa State Ins. Co., 218 Mo. App. 587, 265 S. W. 855; Cohn & Greenman v. National Ins. Co., 96 Mo. App. 315, 70 S. W. 259; 26 C. J. 344.]

So much therefore for a very general statement of the law to govern the case, upon which we shall subsequently have occasion to elaborate somewhat in connection with particular questions arising for decision.

At the close of the whole case plaintiffs jointly requested the court to direct the jury peremptorily to return a verdict in their favor, and the court's refusal of their request is now assigned as the first ground of error.

They argue in support of their point that by showing the execution of the policy, the loss, and the amount thereof, they made out a *prima facie* case; that for defendant to have overcome such *prima facie* case, the burden was upon it, under the authority of Stephens v. The Fire Assn. of Philadelphia, *supra,* to show that no hostile fire had preceded the explosion; that defendant did not purport to have any witness who had been taking any notice of the Bilsky home before the explosion, but instead relied wholly upon inferences and circumstances to support its defense that there had been no antecedent hostile fire; that it was necessary for defendant's proof, being of a circumstantial nature, to exclude with reasonable certainty every other idea than that the explosion preceded the fire, if defendant was to be allowed to prevail; that the inferences in the case are just as consistent with plaintiffs' theory of the case as with that put forward by defendant; that the latter must therefore be held to have failed to sustain its burden of proof; and that consequently, with no defense made out under the exception written into the policy, there was no defense to be submitted to the jury, and the verdict should have gone peremptorily for plaintiffs.

Regardless of where the burden of proof actually lay upon the issue of the application of the exception to liability for loss caused by an explosion not preceded by a hostile fire, plaintiffs undertook to show by oral evidence, the weight and credibility of which was for the jury, that such a fire was raging preceding the explosion, and in their principal instruction, as well as in at least two other instructions, they required the jury to find such fact as a condition to their right to recover for their entire loss from defendant. However upon any theory we think defendant amply sustained its plead-

ed defense, so that the court would have been wholly unwarranted in directing a verdict for plaintiffs, even with the execution of the policy, a fire, and the total destruction of the premises in effect admitted on the face of the pleadings.

Plaintiffs' version of the facts, as shown by their own evidence, was that prior to the explosion there was a fire raging outside and above the house in such proportions that it illuminated the sky to an extent that it was noticeable for as much as a mile or more away. If this was true, then defendant was liable upon the basis of a total destruction of the premises by fire, even though the explosion followed in the course of the conflagration. But defendant's evidence put plaintiffs' theory of the facts directly in issue, in view of the testimony of defendant's witnesses, some of whom were in the immediate neighborhood of the Bilsky home and in a position to have had their attention attracted by any such conflagration or illumination as plaintiffs purported to show, that the first they knew of the trouble was when they heard the explosion which came with such terrific force as to demolish the building completely and throw parts of it for as much as a hundred feet.

Of course defendant's evidence was in part negative, but to show that the witnesses had seen no fire necessarily called for negative testimony. The important feature of the case is that some, if not all, of the witnesses for defendant showed themselves to have been so situated that if the building had been on fire prior to the explosion as testified to by plaintiffs' witnesses, their attention, in the very nature of things, would have been attracted to it. It must be kept in mind that plaintiffs, by their own evidence, affirmatively refuted and dispelled any idea that any antecedent hostile fire which might have caused the explosion was not of such intensity as to have been visible to people outside and in the vicinity of the building. So the evidence in the case would have supported a finding either way upon the issue of whether a hostile, consuming fire had preceded the explosion, and even though the defense necessarily was forced to depend in part upon negative and circumstantial evidence, the same was nevertheless substantial evidence. Conceding, therefore, that the evidence as a whole showed that the destruction of the property might have resulted in either of two ways, defendant nevertheless successfully bore any burden imposed upon it of showing the absence of any antecedent hostile fire, so that the case did not resolve itself into one of mere speculation and conjecture, but instead an issue of fact was presented which was properly submitted to the jury for their determination. [Conner v. Missouri Pac. R. Co., 181 Mo. 397, 81 S. W. 145; Solomon v. Moberly Light & Power Co., 303 Mo. 622, 640, 262 S. W. 367, 372; Thompson v. City of Lamar, 322 Mo. 514, 17 S. W. (2d) 960; Morton v. St. Louis-S. F.

Ry. Co., 323 Mo. 929, 20 S. W. (2d) 34; Cech v. Mallinckrodt Chemical Co., 323 Mo. 601, 20 S. W. (2d) 509; State ex rel. v. Haid, 325 Mo. 107, 28 S. W. (2d) 97; Baker v. Chicago, B. & Q. R. Co., 327 Mo. 986, 39 S. W. (2d) 535; Huelsmann v. Stute & Co. (Mo. App.), 28 S. W. (2d) 387; Stephens v. The Fire Assn. of Philadelphia, *supra*.]

But it is argued on behalf of plaintiff Prudential Insurance Company of America, the mortgagee, that by virtue of the contract between it and defendant as expressed in the mortgage clause of the policy, judgment should in all events have gone in its favor for the full amount of the policy sued on, even though the evidence might have warranted or required the denial of a recovery to plaintiff Sarah Bilsky, the owner of the property. Having regard for certain evidence in the case, of which more will be said anon, which tended to attribute responsibility for the explosion to the act or design of plaintiff Sarah Bilsky's husband, Dr. Nathan Bilsky, the mortgagee argues that any fire or spark which might have caused the explosion would have been hostile to it as mortgagee, even though the same fire or spark might have been innocent as to Mrs. Bilsky, or at least of such a character and produced under such circumstances that she could not have recovered for the damage resulting from it. The whole contention, of course, is based upon and grows out of the provision of the mortgage clause in the policy to the effect that the insurance, as to the separate interest of the mortgagee therein, should not be invalidated by any act or neglect of the mortgagor or owner of the property insured.

The point so raised might well be ruled upon a mere matter of practice and procedure. The only request for a directed verdict for either plaintiff was the one instruction heretofore referred to which called for the direction of a verdict for both plaintiffs jointly; and inasmuch as plaintiff Sarah Bilsky, even under the mortgagee's present insistence, was not entitled to receive such an instruction, then the court could in no event be put into error for having refused an instruction which would have brought about that very result. [Smith v. Gately Stores (Mo. App.), 24 S. W. (2d) 200; Smith v. Weilbacher Service Co. (Mo. App.), 35 S. W. (2d) 996; Bramblett v. Harlow (Mo. App.), 75 S. W. (2d) 626.]

But it happens that the mortgagee is wrong upon the merits of its proposition, so that our decision does not need to turn upon any point of practice. If there was a hostile fire preceding the explosion, it was to be so denominated because it was hostile to the building or its contents, aside from and unaffected by any question of the situation or interest of any person in the property insured. Of course, as we understand the coverage of a fire policy exempting the insurer from liability for loss caused by an explosion, when a mere

spark, without consuming any part of the building or its contents however small, instantaneously sets off a destructive explosion within the building, the resulting loss is to be attributed wholly to the explosion as one not preceded by any hostile fire. This for the reason that a hostile fire is one which, in its natural course, and if uninterrupted, would of itself result in the partial or total destruction of the building or its contents; and plaintiffs themselves so had the jury instructed by their own instruction No. 3. Consequently if such a mere spark from some electrical device or contrivance, not of itself endowed with the potential power of destruction, did set off the explosion in question, there would be no liability on defendant's part for the damage; and with defendant not liable in that the loss was not by fire, there would be nothing owing and to be paid to the mortgagee under and by virtue of the loss payable clause of the policy, since the existence of an outstanding mortgage or deed of trust does not in anywise extend the liability of the company as to the peril insured against.

It follows, therefore, that plaintiffs' request for a directed verdict at the close of the whole case was properly refused.

Objection is leveled against three instructions given for defendant denominated B, C, and D. Such instructions were as follows:

"B. The Court instructs the jury that if you believe that the dwelling in question was caused to become filled with an explosive gas or vapor, and that such explosive gas or vapor came in contact with a spark either from a Frigidaire, an oil burner, water heater, or electrical connection, and was thereby caused to explode, and that such explosion wrecked and demolished said dwelling, and that neither said dwelling nor its contents were on fire or burning before such explosion, then you will find your verdict in favor of the defendant, even though you may believe that after said explosion a fire occurred in some of the materials which had been thrown down by such explosion."

"C. The Court instructs the jury that the policy sued on in this case is a policy of fire insurance, and does not cover any damage due to an explosion, unless the explosion is preceded and caused by reason of the building or its contents having been on fire prior to the explosion. Therefore, if you find and believe from the evidence that the dwelling in question was demolished by an explosion, and that no part of the building or its contents were on fire prior to the explosion, you will find your verdict in favor of the defendant."

"D. The Court instructs the jury that if you find and believe from the evidence that the dwelling in question was demolished by reason of some explosive substance being ignited by means other than the dwelling or its contents being on fire before the explosion, then the plaintiffs are not entitled to recover anything in this action."

It is said that the giving of instruction B constituted reversible error in that it was not supported by the evidence, was speculative and argumentative, and singled out isolated items of the evidence for comment.

We appreciate the fact that instructions in theory are to be limited to a definition of the issues in the case, and that they are generally in better form if they are not extended to include a reference to particular items or detached portions of the evidence. However we do not believe, under the facts and circumstances of the case, that the instruction in question offended against the proprieties, even though it was indeed based upon a consideration of the specific facts enumerated therein.

As a matter of fact plaintiffs' own theory seems to have been that the house, which had been closed up tightly throughout the day, had become filled with an explosive gas or vapor which must have been set off by a spark from one of the electrical devices mentioned in the instruction. Such was the purport of the testimony of plaintiff Sarah Bilsky herself, both as to the presence of cans of paint, varnish remover, and the like in the basement, and the propensities of the several electrical devices to give off sparks; and defendant's evidence added to the basis for the instruction, its evidence being that after the fire certain chair cushions which had been blown out into the yard were found to have been soaked with naphtha, gasoline, or ether, all of which were highly volatile fluids which would vaporize and form an explosive mixture at the rather high temperature of that summer day.

It is to be observed, however, that the instruction did not purport to charge the jury as to the weight to be accorded the particular facts singled out therein as compared with the other facts in the case, nor did it in anywise preclude the jury from a proper consideration of all the evidence adduced. It consequently did not constitute an undue comment upon detached portions of the evidence; it was not argumentative; and it was no more speculative than the exigencies of the situation and the respective theories of both parties warranted and required. So read and considered, in the light of both reason and precedent, it afforded plaintiffs no just basis for their present complaint against it. [Irons v. American Ry. Exp. Co., 318 Mo. 318, 300 S. W. 283; Ward v. Missouri Pac. R. Co., 311 Mo. 92, 277 S. W. 908; Schnurr v. Perlmutter (Mo. App.), 71 S. W. (2d) 63; Nyberg v. Wells (Mo. App.), 14 S. W. (2d) 529; Berthold v. Danz (Mo. App.), 27 S. W. (2d) 448.]

Actually the purpose of the instruction was to tell the jury that if the explosion was not preceded by a hostile fire; that if the force of the explosion itself wrecked and demolished the building as such; and that if the fire which occurred was in the materials of which

the building had been composed and which remained after its identity as the subject of the insurance had been destroyed, then defendant was not liable for any of the loss under its policy. This was a correct exposition of the law (Nave v. Home Mut. Ins. Co., 37 Mo. 430; Farrell v. Farmers' Mut. Fire Ins. Co., 66 Mo. App. 153), and the giving of the instruction therefore constituted no error.

The objection to instruction C is that it omitted to tell the jury that plaintiffs could recover if it was found that there was damage to the insured property by fire after the explosion. What counsel have in mind is the provision of the exception excluding liability for loss by explosion to the effect that if fire ensues following the explosion, then the company will be liable for the damage caused by the fire, though not for that caused by the explosion. [Cohn & Greenman v. National Ins. Co., *supra*.]

Plaintiffs' view of the meaning of the policy is correct enough, but under the circumstances that view of liability has no place in this case. All the witnesses agreed that the building as such was completely demolished by the explosion, so that defendant, under Nave v. Home Mut. Ins. Co., *supra*, and Farrell v. Farmers' Mut. Fire Ins. Co., *supra*, could not have been liable for the damage resulting from any fire which broke out in the ruins of the building. In other words, as we have repeatedly pointed out, defendant was liable for the consequences of the explosion only in the event that the explosion was preceded and caused by a hostile, consuming fire in either the building or its contents, and in so instructing the jury by instruction C the court was correctly declaring the law.

The substance of the criticism of instruction D is that it assumed the presence of explosive substances in the building; that it embodied the theory of a plurality of fires; and that it ignored plaintiffs' *prima facie* case.

We think that all such complaints against the instruction are wholly without merit. Instead of assuming, it required a finding, that the building was demolished by the ignition of some explosive substance therein, but even if it had assumed the presence in the building of an explosive substance there would have been no harm done, since the admitted fact of the explosion necessarily contemplated the presence in the building of some explosive substance. We see no basis whatever for the claim that it submitted the idea of a plurality of fires; nor was it erroneous if it may be thought to have ignored plaintiffs' *prima facie* case. Counsel say in that regard that the instruction, in requiring a negative finding on plaintiffs' case, should have required a finding that there was no hostile fire prior to the explosion. As we understand it, that is exactly what the instruction did, since it predicated a verdict for defendant upon a finding that the explosion was caused by something other than an antecedent fire in the building or its contents.

Finally we come to the point that absent a plea in the answer of a willful and intentional destruction of the property, the court erred in permitting evidence to be introduced by defendant tending to trace and attribute the origin of the explosion and fire to the intentional act and design of Dr. Nathan Bilsky; and that plaintiffs' rights were likewise prejudiced by the comment of defendant's counsel with reference to such matters both in the course of the opening statement of the defense as well as in the closing argument of the case to the jury.

Suffice it to say that the substance of what defendant either proved or offered to prove was that no one but the two Bilskys had had keys to the premises; that on the day of the fire the whole family had left the home early in the morning for the City of St. Louis, and did not return together until after midnight, after the loss had occurred; that Dr. Bilsky, however, returned alone late in the afternoon, supposedly to get a blue coat for their small child, although the night was a warm night in June; that later, following the fire, proof of loss was made for a child's blue coat alleged to have been destroyed in the fire, and when the doctor was pressed for an explanation he finally stated that the child had, not one, but three coats, all blue; that the explosion which occurred was of such terrific force as to indicate the presence throughout the house of a highly explosive substance; that after the explosion, chair cushions were found thrown out into the yard indicating by their odor that they had been opened and soaked with what the witnesses and police officers took to have been naphtha or ether; and that an alarm clock was found in the ruins so wired as to indicate that it had been prepared and employed to emit the spark which would set off the explosion.

It was shown that the names of both Bilskys were on the note to the Prudential Insurance Company of America, and that the first installment on the principal of the note was shortly to fall due. Defendant also offered to show that the Bilskys were dissatisfied with the location of their home; that it was far removed from means of transportation; that its inaccessibility brought great inconvenience to Mrs. Bilsky while her husband was away all day long at his business; and that they had recently attempted to sell the place, but without any success.

No point was saved in the motion for a new trial regarding any part of the opening statement of defendant's counsel, and much of its proffered evidence was excluded by the court, particularly with reference to the finding of the alarm clock in the ruins and the attempt of the Bilskys to have sold the property prior to the loss. In fact the trial court pursued a policy of endeavoring to exclude all evidence, the only relevancy of which was to show a motive for

any willful and intentional destruction of the property; and defendant argues with much earnestness that the only error committed by the court was in so restricting the scope to be taken in its proof.

Though we fully appreciate the general rule that the affirmative defense of intentional destruction of the insured property is one to be specially pleaded before evidence can be admitted in support of any such theory, we do not understand that the situation in the case at bar calls for the application of such rule. This is not a case where a loss is admitted under circumstances which would bring the loss within the coverage of the policy, and payment of the loss, for which the insurer would otherwise be liable, is resisted upon the theory that the same was solely attributable to the willful act of the insured or some one acting for him. Rather the case before us is one, in accordance with the defense set up in the answer, where the loss did not fall within the coverage of the policy, but instead fell within the exception written into it, if defendant's version of the facts was to be believed.

In other words, just as we have already repeatedly pointed out, the issue in the case was whether or not the explosion was preceded by a hostile, consuming fire; and consequently, any evidence was admissible on the part of either side of the case which tended to sustain the burden of evidence under which such party labored.

Would it not logically follow, therefore, that in endeavoring to bear its burden of showing that no hostile fire had preceded the explosion, defendant was entitled to show, if it could, just how the explosion occurred, who caused it, and his motive for so doing, as his motive may have influenced the probability of his act? We think that all such evidence was clearly competent. The policy excluded liability for loss from an explosion not preceded by a hostile fire, regardless of whether the explosion was accidental or deliberate and intentional, and if of the latter character, regardless of by whom it may have been caused. If defendant could have shown, for instance, that known thugs or gangsters, or persons known to have harbored ill will towards the Bilskys, had caused an explosion to be set off within the premises, no one would seriously contend that such evidence would not have been admissible as proving that the loss was solely due to an explosion falling within the exception to liability under the policy. Such being true, the situation regarding the admissibility of the evidence was no different if the evidence tended to prove that instead of thugs and gangsters, it was Dr. Bilsky who brought about the explosion which in turn produced the fire, since the identity of the person causing the explosion was only incidentally of importance, the fact of the explosion not having been preceded by a hostile fire being the important feature of the defense.

It is our opinion, therefore, that under the defense pleaded, and

for the purpose of supporting such defense, the court should have allowed, and was warranted in allowing, the evidence to be introduced tending to show that the explosion was of intentional origin; that the evidence regarding the movements of Dr. Nathan Bilsky on the day in question was competent in that it tended to show that he alone had had access to the building in the last few hours preceding the loss; and that by the same token, evidence as to the Bilsky's motive was competent, in that the showing of a motive on their part for the destruction of the premises and the collection of the insurance strongly supported the probability of what the other evidence tended to disclose.

What we have said regarding the admissibility of evidence is also to be taken as dispositive of the point raised regarding the propriety of the closing argument of defendant's counsel to the jury.

The judgment rendered by the circuit court should be affirmed; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.