**GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff-Appellant,**

v.

**The WESTERN FIRE INSURANCE COMPANY, a corporation, Defendant-Respondent.**

**No. 8964.**

Springfield, Court of Appeals, Missouri.

July 24, 1970.

Daniel, Clampett, Ellis, Rittershouse & Dalton, Paul D. Rittershouse, William A. R. Dalton, Springfield, for plaintiff-appellant.

Woolsey, Fisher, Clark & Whiteaker, Russell G. Clark, Springfield, for defendant-respondent.

STONE, Judge.

In this jury-waived, court-tried action, plaintiff General Motors Acceptance Corporation (GMAC), mortgagee of a 1965 Buick automobile owned by Benny and Ruth Betterton, husband and wife, sought to recover as a loss payee named in an insurance policy issued by defendant The Western Fire Insurance Company (Western) to the Bettertons which afforded, inter alia, $50 deductible collision coverage on that automobile. From a judgment for defendant, plaintiff appeals.

Form 1557 captioned "Elimination Of All Coverage While Automobile Is Operated By Named Person," which was an integral part of the Western policy for the contract year beginning November 4, 1965, stated that "in consideration of the issuance of the policy by the company [West-

ern], it is hereby agreed that none of the coverages provided by the policy shall apply while the automobile(s) described in the policy, or any other automobile to which the terms of the policy are extended, is being operated by the following named person: Willard L. Betterton." While being driven by Willard L. Betterton on April 23, 1966, the Betterton Buick was damaged by collision or upset to an extent in excess of $2,699.77, the sum demanded in plaintiff GMAC's petition as its then "interest in said automobile." The trial court's specific finding that "GMAC had notice of said [Form 1557] prior to the collision loss" rested upon substantial evidence, and in its appellate brief GMAC frankly concedes it "does not challenge" that finding. Nevertheless, GMAC presented proof of loss and demanded payment of the aforesaid sum on the theory that, as a loss payee named in the policy, its interest was covered because of the mortgage clause in the policy, the pertinent portion of which provided that "this insurance as to the interest of the . . . mortgagee . . . shall not be invalidated by any act or neglect of the lessee, mortgagor or owner of the within described automobile nor by any change in the title or ownership of the property . . . ."

As opposing counsel agree, the mortgage clause in the Western policy was what is known as a *standard* or *union* clause as distinguished from an *open* clause. "A policy that simply provides that it shall be payable to the mortgagee as his interest may appear is called an 'open mortgage clause' . . . . This clause is to be distinguished from the [standard or] 'union mortgage clause.' In the latter clause it is

stipulated, in substance, that in case of loss the policy is payable to the mortgagee and that his interest as payee shall not be invalidated or affected by any act or omission of the mortgagor. Where there is merely an open mortgage clause there is no privity created between the company and the mortgagee, he not being a party to the contract but merely an appointee to receive the proceeds in case of loss. His rights will be defeated by a breach of the conditions of the policy by the mortgagor. If for any reason the policy becomes void or ceases to exist as to the insured it is void and it ceases to exist as to the mortgagee. Whereas, the [standard or] union mortgage clause operates as an independent contract of insurance between the mortgagee and the company upon the former's interest, which cannot be defeated by a breach of the conditions of the policy on the part of the mortgagor or solely by his act."[1]

■ But, although a standard mortgage clause operates as an independent contract of insurance between the mortgagee and the insurer as to the former's interest, "it is such only for a limited purpose, so that the act of the mortgagor alone and of itself cannot defeat the right of the mortgagee" and "it is not an entirely disconnected contract." Swihart v. Missouri Farmers Mut. Tornado, Cyclone & Windstorm Ins. Co., 234 Mo.App. 998, 1004, 138 S.W.2d 9, 13(3); Northwestern National Ins. Co. v. Mildenberger, Mo.App., 359 S.W.2d 380, 384. Rather, it is a contract " 'ingrafted upon the main contract of insurance contained in the policy itself [and is] to be rendered certain and understood by reference to the policy itself.' " Ford v. Iowa

---

1. Prudential Ins. Co. v. German Mut. Fire Ins. Ass'n., 228 Mo.App. 139, 141–142, 60 S.W.2d 1008, 1009(1); Gordon v. Northwestern Nat. Ins. Co., 228 Mo.App. 1008, 1021, 77 S.W.2d 512, 519–520; Prudential Ins. Co. v. German Mut. Fire Ins. Ass'n., 231 Mo.App. 699, 705, 105 S.W.2d 1001, 1005(5). In this connection, see Ford v. Iowa State Ins. Co., 317 Mo. 1144, 1150, 1154, 298 S.W. 741, 743, 745, 56 A.L.R. 842; Brown v. State Auto. Ins. Ass'n., Auto. Underwriters Corp., Des Moines, Iowa, Mo.App., 265 S.W.2d 741, 743(1); Ramsey v. Farmers' Mut. Ins. Co. of Macon, Mo., 234 Mo.App. 1102, 1107, 139 S.W.2d 1027, 1029(1); 43 Am.Jur.2d Insurance §§ 766–769, incl., pp. 748–754; 5A Appleman, Insurance Law and Practice § 3401, p. 279.

State Ins. Co., 317 Mo. 1144, 1154, 298 S. W. 741, 745, 56 A.L.R. 842, 849; Trust Co. of St. Louis County v. Phoenix Ins. Co. of Hartford, Conn., 201 Mo.App. 223, 236, 210 S.W. 98, 102(4). Hence, a distinguished authority in this field appropriately admonishes that "[a] distinction which is rather important to grasp is that the policy terms are themselves not nullified by a standard mortgage clause. It is, rather, that a new contract containing those provisions is made with the mortgagee personally . . . ." 5A Appleman, Insurance Law and Practice § 3401, l.c. 292.

■ By Form 1557, of which GMAC had notice, the Western policy afforded no coverage while the Betterton Buick was being driven by Willard L. Betterton. That provision, which was valid [cf. Graham v. Gardner, Mo.App., 233 S.W.2d 797, 800(4); Daniel v. State Farm Mut. Ins. Co., 233 Mo.App. 1081, 1090, 130 S.W.2d 244, 248(3); 45 C.J.S. Insurance § 834b, p. 909] was an integral part of the policy contract of insurance between the owners-mortgagors of the Buick, as insureds, and Western, as insurer. Cf. Marshall's United States Auto Supply v. Maryland Casualty Co., 354 Mo. 455, 461, 189 S.W.2d 529, 532(4). And, although the standard mortgage clause in the policy contract "operate[d] as an independent contract of insurance between the mortgagee [GMAC] and the company [Western] upon the former's interest" [Prudential Ins. Co. v. German Mut. Fire Ins. Ass'n., 228 Mo.App. 139, 142, 60 S.W.2d 1008, 1009], the provision stated in Form 1557 became no less an integral part of that contract between GMAC and Western. See again authorities cited in preceding paragraph.

■ By the standard mortgage clause under consideration, Western as insurer contracted with GMAC as mortgagee that "this insurance as to the interest of the . . . mortgagee . . . shall not be invalidated by any act or neglect of the lessee, mortgagor or owner of the within described automobile nor by any change in the title or ownership of the property . . . ." In the first place, the plain and inescapable fact is that the Bettertons, the named insureds, and Western, the insurer, covenanted and agreed at the beginning of the contract year that the policy in suit would provide no insurance coverage whatever on the Betterton Buick while it was being operated by Willard L. Betterton. Hence, insurance on the Buick having been nonexistent while he was driving, there was no coverage during such periods of Willard's operation which could have been "invalidated," i. e., nullified. Webster's Third New International Dictionary, p. 1188. Furthermore, this state of noncoverage during such periods existed by reason of the unambiguous terms of the policy contract and *not* "by any act or neglect of" the owners-mortgagors, for operation of the Buick by Willard was not prohibited by the Western policy and, if his operation of that vehicle at the time of accident was with the knowledge and permission of the named insureds-mortgagors (as to which the submitted record is silent), they did not thereby breach or violate any term, provision or condition of the policy contract. Nor does the case at bar "involve any question of cancellation, suspension, avoidance or forfeiture of the policy." Graham v. Gardner, Mo.App., 233 S.W. 2d 797, 801(6). In the stated circumstances, we agree with the learned trial judge that the standard mortgage clause in the Western policy did not create coverage never afforded by that policy and that GMAC cannot compel payment of a loss against which Western never contracted to indemnify.

Support for this conclusion is provided by the opinion in Bilsky v. Sun Ins. Office, Limited, of London, England, 231 Mo.App. 1072, 84 S.W.2d 171, a suit on a fire insurance policy by plaintiff Bilsky, owner of the insured dwelling, and plaintiff Prudential Insurance Co. of America, owner of a note secured by deed of trust covering that dwelling. The liability of defendant insurer to plaintiff Bilsky depended upon whether or not a hostile fire preceded and

produced an explosion which totally destroyed the structure; and, since under the evidence this issue was submissible, the court first found that the judgment entered on the jury verdict for defendant should be affirmed as to plaintiff Bilsky. Turning to the contention of plaintiff Prudential, the lienholder, that nevertheless it was entitled to recover upon the standard mortgage clause in defendant's policy "to the effect that *the insurance, as to the separate interest of the mortgagee therein, should not be invalidated by any act or neglect of the mortgagor or owner of the property insured*" [231 Mo.App. at 1083, 84 S.W.2d at 175], the court stated that "[i]f there was a hostile fire preceding the explosion, it was to be so denominated because it was hostile to the building or its contents, *aside from and unaffected by any question of the situation or interest of any person in the property insured*" [231 Mo.App. at 1083, 84 S.W.2d at 176] and soundly reasoned that "with defendant not liable in that the loss was not by fire, there would be nothing owing and to be paid to the mortgagee under and by virtue of the loss payable clause of the policy, since *the existence of an outstanding mortgage or deed of trust does not in anywise extend the liability of the company* [insurer] *as to the peril insured against*." (Emphasis ours) 231 Mo.App. at 1084, 84 S.W.2d at 176.

GMAC relies principally upon Southwestern Funding Corp. v. Motors Ins. Corp., 59 Cal.2d 91, 28 Cal.Rptr. 161, 378 P.2d 361; but, having regard for the policy and facts there involved, that holding does not support GMAC's position here. In Southwestern Funding, supra, a loss payable endorsement provided that " '[t]he insurance under this [automobile] policy as to the interest *only of the Lien-Holder* [plaintiff] shall not be impaired in any way by . . . any breach of warranty or *condition* of the policy . . . or by the performance of any act in violation of any terms or *conditions* of the policy or because of the failure to perform any act required by the terms or *conditions*

of the policy or because of the *subjection of the property to any conditions,* use or operation not permitted by the policy . . . .' " (Emphasis by the court) *The first numbered paragraph under the heading of "CONDITIONS" in the policy was a territorial limitation clause* providing that " '[t]his policy applies only to accidents, occurrences and loss during the policy period while the automobile is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof,' " modified by endorsement to permit use of the insured automobile "in the Republic of Mexico not exceeding fifty (50) miles from the boundary line of the United States . . . ." for a period not exceeding ten days at any one time. 28 Cal.Rptr. at 162, 378 P.2d at 362. The insured automobile was damaged in Mexico more than fifty miles from that boundary line.

■ Noting that the territorial limitation clause was "under the specific heading of 'CONDITIONS,' " emphasizing the principles that any uncertainty as to coverage should be resolved against the insurer and that, if there be conflict in meaning between an endorsement and the body of the policy, the endorsement controls [28 Cal.Rptr. at 162(1, 2), 378 P.2d at 362(1, 2)], and opining that "the subjection of the [insured] automobile to the 'condition' of being damaged in a collision in Mexico would very readily appear to the reasonable mind reading the policy and the Automobile Loss Payable Endorsement, to be one of the specific situations against which such endorsement by its language extends insurance coverage to plaintiff lien holder" [28 Cal.Rptr. at 163, 378 P.2d at 363], recovery by the lienholder was permitted. Thus, in Southwestern Funding, supra, there was a breach of a *condition* of the policy, the performance of an act by insured in violation of such policy *condition,* and "the subjection of the automobile" to that *condition.* In the case at bar, "Elimination Of All Coverage While Automobile Is Operated By Named Person," to wit,

Willard L. Betterton, was by Form 1557, an endorsement constituting an integral part of the Western policy, and was *not* by or in one of the "conditions" of the policy; there was no breach or violation of any term, provision or condition of the policy; and, there is no basis whatever for invocation or application of the doctrine of uncertainty as to the coverage afforded by the policy.

On the state of facts under consideration here, the opinion in United States Trust & Guaranty Co. v. West Texas State Bank of Snyder, Texas, Tex.Civ.App., 272 S.W.2d 627, writ dismissed, is more relevant and persuasive. In the automobile insurance policy there involved, it was provided in "the insuring agreement" and *not* in a "condition" that "[t]his policy applies only to accidents which occur . . . while the automobile is within the United States of America, its Territories or Possessions, Canada or Newfoundland or is being transported between ports thereof . . . ." [272 S.W.2d at 628], and the court denied as a matter of law the mortgagee's claim for damage to the insured automobile while it was being driven in Mexico, reasoning in this wise: "We recognize that the clause making the loss payable to the mortgagee regardless of any act or neglect of the mortgagor, permits the mortgagee's recovery despite any violation of a 'condition' by the mortgagor unknown to the mortgagee. [Citing authority] The question here is not relative to such a matter. The question is whether the accident that damaged the automobile was covered by the policy. The plain, unambiguous language of the policy compels the conclusion that while the automobile was without the territory covered by the policy there was no coverage under the policy. This was not a condition, the breaking of which by the mortgagee was, according to the contract, not to affect the rights of the innocent mortgagee. The policy simply provided there was no insurance while the car was without the territory stated." 272 S.W.2d at 629–630.

 As mortgagee of the Betterton Buick, GMAC had an insurable interest therein [Farmers' & Laborers' Co-op. Ins. Ass'n. of Audrain County v. Bank of Centralia, 227 Mo.App. 1068, 1072, 56 S.W.2d 606, 607(1)]; and, with notice that the Western policy afforded no coverage on that automobile while it was operated by Willard, GMAC could have obtained, or could have required the owners-mortgagors of the Buick to provide, coverage on its insurable interest at all times. 227 Mo.App. at 1073, 56 S.W.2d at 608. Having failed so to do, it cannot avoid the consequences of its own inaction by shifting its loss onto the insurer in a policy which plainly provided no coverage while Willard was driving.

The judgment for defendant is affirmed.

TITUS, P. J., and HOGAN, J., concur.