Elonzo WEEKLY and Monte Silverblatt,
Plaintiffs-Appellants,

v.

MISSOURI PROPERTY INSURANCE
PLACEMENT FACILITY,
Defendant-Respondent.

No. 36775.

Missouri Court of Appeals,
St. Louis District,
Division One.

June 15, 1976.

J. Leonard Kline, Clayton, for plaintiffs-appellants.

Willson, Cunningham & McClellan, Jerome M. McLaughlin, St. Louis, for defendant-respondent.

WEIER, Presiding Judge.

This appeal arises out of a suit on a fire insurance policy issued by defendant, Missouri Property Insurance Placement Facility, a state regulated agency to place basic insurance in urban areas under § 379.810 et seq., RSMo 1969, to recover for loss sustained when the insured building was damaged by fire on January 14, 1973. Suit was filed by Elonzo Weekly, the owner, and Monte Silverblatt, the named trustee in two deeds of trust against the property. The case was tried to the court which found for defendant, and plaintiffs appeal.

In 1960, Elonzo Weekly and his wife purchased certain property at 5759 Wabada in St. Louis for $3,500.00 from the Silverblatt Realty Company. The purchase was financed by two deeds of trust, the first in the amount of $4,000.00 and the second in the amount of $3,500.00. Silverblatt Realty Company serviced both deeds of trust. The owner's monthly payment of $75.00 was to cover principal and interest on the second deed of trust, interest only on the first deed of trust, and an escrow fund for payment of property taxes. The insurance was to be paid for separately by the owner.

The owner encountered financial difficulties and at one point fell three and one-half years behind in his payments so that the property had to be refinanced. In late 1969 or early 1970, the owner and his wife separated and vacated the premises. His wife transferred title to Mr. Weekly who thus became sole owner of the property. Silverblatt Realty Company then took over management of the property for rental purposes. The poor condition of the property made it necessary for the company to make repairs before it could be occupied. Income from the property was used to repay the company for the amount expended on repairs so that the note holders received no

payments for a considerable period. A monthly financial report was sent Mr. Weekly by Silverblatt Company showing the amount of money collected and expended.

Silverblatt Realty Company is a corporation owning and operating a family real estate business. Roy Silverblatt is president and his brother, plaintiff Monte Silverblatt, is vice-president and treasurer. In addition to buying and selling real estate, they also manage real estate and service real estate loans. Roy Silverblatt is an insurance broker.

The owner made no payments on the notes securing the deeds of trust after October, 1969 when he vacated the property. Property taxes for 1965 were paid in 1967 or 1968. Thereafter no taxes were paid covering this property either by plaintiffs or Silverblatt Realty Company. Under the initial arrangement with the owner, the Silverblatt Realty Company was responsible for accumulating a fund with which to pay the taxes. Although by the same arrangement the owner was initially responsible for insurance payments, it appears that from the time it took over management of the property Silverblatt Realty Company also took over the responsibility for insurance payments.

Roy Silverblatt testified that when the time came for renewal of insurance, a notice was sent to Weekly who then came to the realty office on June 21, 1972 and provided Silverblatt with answers to the questions in the application, which Silverblatt typed in. He presented it to Weekly for examination and his signature, and then sent it to defendant. From the application and testimony of defendant's manager, it appears that Roy Silverblatt made a prior attempt to renew this policy without the assistance of Mr. Weekly. The same application had been first received by defendant on June 5, 1972, but was returned to Silverblatt because several items, among them Mr. Weekly's signature, were missing. Defendant again received the application on June 26 and again had to return it to Roy Silverblatt for answers to questions number

4, asking for the requested renewal date, and number 16, "are there any delinquent taxes against this property?". Roy Silverblatt says that he telephoned Mr. Weekly for this information and questioned him about the existence of delinquent taxes. Weekly supposedly answered "not to his knowledge" and Silverblatt then answered "no" by putting an "X" in the appropriate spot. Weekly does not remember the conversation. The application was again submitted to defendant on July 5, 1972, and a policy in the amount of $5,000.00 for fire and extended coverage was issued in the name of Elonzo Weekly, to run from July 15, 1972 to July 15, 1973, with mortgage clause made payable to Monte Silverblatt. In filling out the application Roy Silverblatt was acting as broker for Weekly and the mortgagee, not as agent for defendant.

The evidence has little information about the identity of the holders of the mortgages and the balance due on the two notes at the time of loss. Although both deeds of trust contain the name E. Davis as beneficiary, this person was evidently a straw party since Roy Silverblatt testified the financing was completed through two individuals, one for the $4,000.00 note and first deed of trust, and one for the $3,500.00 note and second deed of trust. No exact amount due on either appears, but Roy Silverblatt testified "around" three thousand was due on the first and "a little under" two thousand on the second. He still "represented" the holders of the loans. The company had a fifty percent interest in the loan secured by the second deed of trust.

The building was damaged by fire on January 14, 1973, in an amount in excess of $5,000.00. Weekly was notified but did not go to inspect the damage. Roy Silverblatt had the building boarded up. Defendant was informed of the fire loss and engaged a firm of public adjusters who discovered the tax delinquency for the years after 1965 and notified defendant. Defendant then wrote to Weekly declaring the policy void *ab initio*, stating that the policy "would not have been issued by this company had it not been induced to execute the policy be [sic]

your false representation" regarding delinquent taxes. A check for $51.07, representing the premium payment plus six percent interest, was enclosed . Copies of the letter were sent to Roy and Monte Silverblatt. This suit ensued and was tried to the court which found for defendant.

There is no dispute in this case that the application for insurance contained a misrepresentation. Question number 16 regarding the existence of delinquent taxes was answered in the negative. Actually, property taxes had not been paid since 1965 and two suits had been filed for their collection. On February 26, 1973, with court costs, the total due the collector was $1,337.59.

In their appeal, plaintiffs maintain that the issue to be determined is whether the misrepresentations in the renewal application were material. They refer to *American Fire and Indemnity Company v. Lancaster*, 415 F.2d 1145 (8th Cir. 1969) which holds that when a representation in an application for insurance is not in the form of a warranty or incorporated into the policy itself "the representation not only must be false, but also material to the risk in order for the insurer to avoid its policy." *American Fire and Indemnity Co. v. Lancaster, supra* at 1149[5]. *Lancaster* was a diversity case in which Missouri law was applied.

■ "A representation made to an insurer that is material to its determination as to what premium to fix or to whether it will accept the risk, relates to a fact actually material to the risk which the insurer is asked to assume. The word 'risk' does not relate to an actual increase in danger but to a danger determined by the insurer's classification of the various circumstances affecting rates and insurability. That the fact misrepresented has no actual subsequent relation to the manner in which the event insured against occurred, does not make it any the less material to the risk. Thus, whether a misrepresentation is material * * * is determined by whether the fact, if stated truthfully, might reasonably have influenced the insurance company to accept or reject the risk or to have charged a different premium, and not whether the insurer was actually influenced." *Miller v. Plains Insurance Company*, 409 S.W.2d 770, 774[5] (Mo.App.1966). A fact is considered material when it appears that the insurer would have increased the premium or refused to issue the policy altogether. *Bearden v. Countryside Casualty Company*, 352 S.W.2d 701, 707[5] (Mo.App.1961).

In its letter to plaintiffs denying liability and declaring the policy void *ab initio*, defendant stated that its regulations prohibited the issuance of fire insurance policies when taxes on the property were delinquent. The testimony of Lawrence E. Benard, defendant's manager, was to the same effect. He pointed out that a lack of sufficient money with which to pay property taxes is often an indicia of financial inability to maintain the condition of the property, making it more subject to loss. It is also significant that the tax debt of $1,337.59 is a lien on the property under § 137.085, RSMo 1969.

■ The decision as to whether a misrepresentation was material to the risk is in most instances one for the trier of fact. *Buck v. Stuyvesant Ins. Co.*, 209 Mo.App. 302, 237 S.W. 840, 842[4] (1922). There was sufficient evidence here from which the trial court could conclude, as it did, that the misrepresentation regarding the tax delinquency was material to the risk.

■ Plaintiffs would have the trial court's judgment reversed on the ground that there was no evidence that Weekly knew that his representation as to the tax delinquency was false and also that, in light of his third grade education, he could not understand that the existence of delinquent taxes would affect the transaction. Their position, although not expressly articulated, appears from the cases cited to be that the necessary element of intent to deceive on Weekly's part was not present. *See Cohen v. Metropolitan Life Insurance Company*, 444 S.W.2d 498 (Mo.App.1969); *Toler v. Missouri Ins. Co.*, 243 S.W.2d 788, 791[2–4] (Mo.App.1951). A finding of intent on Weekly's part, although possible from the

testimony,[1] is not necessary under the facts of this case.

The proper focus here is upon the knowledge and the activities of Roy Silverblatt, given the position of insurance broker which he occupied with regard to the owner, the mortgagees, and defendant-insurer. By his own admission, in filling out the application for insurance, he was acting for the owner, Weekly, and the mortgage holders. He was clearly not acting as an agent for defendant. Defendant did not employ agents but rather issued policies on the basis of written applications submitted. By general rule of law an insurance broker is generally the agent of those for whom insurance is procured. *Schimmel Fur Co. v. American Indemnity Co.,* 440 S.W.2d 932, 938[2] (Mo.1969); *Park v. Fidelity & Casualty Co.,* 279 S.W. 246, 249[8] (Mo.App.1925), cert. denied, *State ex rel. Park v. Daues,* 316 Mo. 346, 289 S.W. 957 (1926).

The unavoidable conclusion is that Roy Silverblatt well knew of the tax delinquency. Further, a strong inference can be drawn from this record that he also knew that defendant would not insure the property if made aware of that delinquency. He twice attempted to submit the application without answering the question. There was, therefore, a material misrepresentation, knowingly made, in the application for insurance, in reliance upon which the policy was issued. The trial court's conclusion that the policy was voidable is correct under the law and the evidence. *See Haman v. Pyramid Life Insurance Company,* 347 S.W.2d 449, 454[1] (Mo.App.1961). Further, defendant-insurer is not estopped from raising its claim of material misrepresentation because it did not itself investigate to determine whether the statement regarding delinquent taxes was in fact true. Where the answers in the application are complete on their face, the insurer is not obliged to make further inquiry, and absent knowledge of the true facts is not estopped to avoid the policy. *Park v. Fidelity & Casualty Co., supra,* 279 S.W. at 248[4], cert. denied, *State ex rel. Park v. Daues, supra,* 289 S.W. 957.

The additional issue on appeal is whether there was sufficient evidence to enable the trial court to conclude that the named mortgagee, but actually trustee, Monte Silverblatt, knew or should have known of the misrepresentations so as to void the policy as to the mortgagees as well as to the insured mortgagor. The policy contains the "standard mortgage clause" which provides that when the loss is directed to be payable to the mortgagee, the interest of the mortgagee will not be invalidated by the acts or neglect of the mortgagor. When this clause is used, it is generally held that fraud, false swearing, or other misconduct by the mortgagor will not preclude an innocent mortgagee from recovering on the policy. *General Motors Acceptance Corp. v. Western Fire Ins. Co.,* 457 S.W.2d 234, 236 (Mo.App.1970); Annot., 24 A.L.R.3d 435 (1969). The clause does not, however, protect the mortgagee when he participates in, or knows, or should have known of, the acts or neglect of the mortgagor. *Citizens State Bank of Dickinson, Tex. v. American Fire & Casualty Co.,* 198 F.2d 57, 59[4, 5] (C.A.Tex., 5th Cir. 1952); *Lumbermen's Mutual Insurance Co. v. Edwards,* 293 F.Supp. 687 (E.D.Mo.1968); *Fidelity-Phenix Fire Ins. Co. v. Garrison,* 39 Ariz. 277, 6 P.2d 47, 48[3] (1931); *Union Trust Co. of Ellsworth v. Philadelphia Fire & Marine Ins. Co.,* 127 Me. 528, 145 A. 243, 246–7[3, 4] (1929).

The property in question was, at the time of the fire, totally under the management and control of the Silverblatt Realty Company of which Roy Silverblatt was president and his brother, Monte, the named mortgagee, was vice-president and treasurer. All transactions related to this property

---

1. Weekly's original arrangement with Silverblatt provided for the latter to pay property taxes out of the monthly payments. Weekly knew that he had not for some time made any payments. In addition, from the time that Silverblatt took over management of the property, monthly reports were sent to Weekly indicating income and expenditures. The income was never even sufficient to pay for the repairs Silverblatt found necessary.

were handled by the company through its officers, the two Silverblatts. When the wrongdoing can be so directly attributed to the loss-payee, he cannot seek the protection of the standard mortgage clause. The trial court's conclusion that Monte Silverblatt knew or should have known of the falsity of the representation made to defendant-insurer is more than amply supported by the evidence.

The judgment of the trial court is therefore affirmed.

McMILLIAN and RENDLEN, JJ., concur.