**CENTRAL BANK OF LAKE OF THE OZARKS, Appellant,**

v.

**FIRST MARINE INSURANCE CO., Respondent.**

**No. WD 54963.**

Missouri Court of Appeals, Western District.

Aug. 25, 1998.

Thomas A. Vetter, Matthew A. Clement, Cook, Vetter, Doerhoff & Landwehr, Jefferson City, for appellant.

W. James Icenogle, William Icenogle, Icenogle & Icenogle, Camdenton, for respondent.

Before ULRICH, C.J., and SMART and EDWIN H. SMITH, JJ.

ULRICH, Chief Judge.

Central Bank of Lake of the Ozarks (Central Bank) appeals the summary judgment entered in favor of First Marine Insurance Company (First Marine). Central Bank, mortgagee of a 1979 Bayliner Eagle Runabout boat, sought to recover as a loss payee named in an insurance policy issued by First Marine to Allen and Judy Faulconer that insured the boat against loss from casualty. Finding that Allen Faulconer misrepresented the status of his son as an owner and operator of the boat in his application for insurance, the trial court declared that the insurance policy was void from the inception as to all claimants under the policy, including Central Bank. The judgment of the trial court is affirmed.

In May 1994, Allen Faulconer purchased a 1979 Bayliner Eagle Runabout boat. To finance the purchase, Ben Faulconer, Allen's son, obtained a loan in the amount of $4,119.06 from Central Bank. Allen Faulconer executed a security agreement giving the bank a lien on the boat. As a condition of the loan, Central Bank required that the boat be insured, and on May 26, 1994, First Marine issued a Yacht Policy to Allen and/or Judy Faulconer insuring the boat against loss from casualty. Central Bank was named as the "loss payee" on the policy.

The application for insurance, signed by Allen Faulconer, listed Allen and Judy Faulconer as "all owners and operators over 15 years of age." The question, "Does any per-

son or organization have any ownership or lease interest in the boat, motor or trailer other than applicant?" was answered in the negative. The application specifically asked, "Has any person listed above [owners and operators] had any automobile accidents or traffic violations in the past three years?" and "Has any person listed above [owners and operators] had an operator's boat permit or automobile driver's license suspended or revoked?" Mr. Faulconer answered the first question with "Allen–1993 Fail to Yield," and answered the second question with "No." The declarations in the application were made part of the contract for insurance by attachment.

First Marine's underwriting guidelines, which were in effect at all times pertinent to this case, would have prevented issuance of the Yacht Policy in question to any owner or operator who had more than two minor traffic violations within three years or a suspension or revocation of his driver's license within three years of the time of application for insurance. Ben Faulconer was not eligible to be insured at any time as an owner or operator under the underwriting guidelines because he had more than two minor traffic violations within three years and his driver's license had been suspended within three years. In fact, on June 30, 1994, First Marine rejected Allen Faulconer's application to add Ben to his policy as an additional named insured based on his ineligibility under the guidelines.

On February 8, 1995, First Marine received notification of a claim of loss claiming that the boat was destroyed by a sinking boat dock on January 20, 1995. As part of its investigation following the loss, First Marine learned from Allen Faulconer that Ben was part-owner and operator of the boat although the boat was titled and insured in Allen's name. Based upon the misrepresentation by Allen Faulconer regarding Ben's ownership and operator status in the application for insurance, First Marine declared the Yacht Policy void *ab initio* and notified Allen and Judy Faulconer of this decision by certified mail on September 7, 1995. A check in the amount of $312.51 representing the policy

premium and accumulated interest was enclosed in the notification. Allen Faulconer signed the certified receipt for the notice, and Judy endorsed and cashed the check.

On June 26, 1996, Central Bank filed its petition against First Marine for damages under the insurance policy as loss payee.[1] First Marine filed an answer to Central Bank's petition affirmatively contending that the policy was void *ab initio* due to substantial and material misrepresentations made by the insured in his application for insurance. Both parties filed motions for summary judgment. Following a hearing on the motions, the trial court entered summary judgment in favor of First Marine. It found that Allen Faulconer misrepresented the status of his son as an owner and operator of the boat in his application for insurance and declared that the insurance policy was void from the inception as to all claimants under the policy, including Central Bank. This appeal followed.

On appeal, Central Bank claims that the trial court erred in entering summary judgment in favor of First Marine. It argues that (1) the misrepresentations in the application regarding Ben Faulconer were not causally related to the loss and, thus, were not material to the risk insured against, and (2) the insurance policy was not void as to Central Bank as loss payee under the terms of the policy.

Appellate review of the grant of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.*

Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* at 376. A defending party may establish

---

1. Allen Faulconer also filed a petition the same day, but voluntarily dismissed it thereafter.

a right to judgment as a matter of law by showing that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.; Reeves v. Keesler*, 921 S.W.2d 16, 19 (Mo.App.1996).

■ Generally, an insurance company may avoid an insurance policy for a fraudulent misrepresentation or a material misrepresentation in the application. *Continental Cas. Co. v. Maxwell*, 799 S.W.2d 882, 887–888 (Mo.App.1990). To prove a fraudulent misrepresentation, the insurer must demonstrate that the insured made a false statement with the intent to deceive the insurance company. *Id.* at 888. Alternatively, to prove a material misrepresentation, the insurer must demonstrate that the representation in the application was material and false when (1) the representation was warranted to be true, (2) the policy was conditioned upon its truth, (3) the policy provided that its falsity will avoid the policy, or (4) the application was incorporated into and attached to the policy. *Id.* A misrepresentation of fact is deemed material if the fact, stated truthfully, might reasonably have influenced the insurance company to accept or reject the risk or to have charged a different premium. *Id.* at 889; *Farley v. St. Charles Ins. Agency, Inc.*, 807 S.W.2d 168, 170 (Mo.App.1991); *Weekly v. Missouri Property Ins. Placement Facility*, 538 S.W.2d 375 (Mo.App.1976). The standard is whether a reasonable person should have expected that the misrepresentation within the insurance application would influ-

ence the insurance company's decision to accept the risk and issue the policy and in determining the premium to charge-not whether the misrepresentation actually influenced the insurer. *Haynes v. Missouri Property Ins. Placement Facility*, 641 S.W.2d 497, 499 (Mo.App.1982). "That the fact misrepresented has no subsequent relation to the manner in which the event insured against occurred, does not make it any the less material to the risk." *Weekly*, 538 S.W.2d at 378 (quoting *Miller v. Plains Ins. Co.*, 409 S.W.2d 770, 774 (Mo.App.1966)) [2].

■ Because the application in this case was incorporated into and attached to the Yacht Policy, First Marine must demonstrate that Mr. Faulconer's omission in the application regarding his son's status as an owner and operator of the boat was both false and material to the issuance of the Yacht Policy. In his application for insurance, Allen Faulconer listed himself and his wife, Judy Faulconer, as "all owners and operators over 15 years of age." He answered the question, "Does any person or organization have any ownership or lease interest in the boat, motor or trailer other than applicant?" in the negative. During First Marine's investigation following the loss, the company learned from Allen Faulconer that Ben was part-owner and primary operator of the boat although the boat was titled and insured in Allen's name. Mr. Faulconer's representation regarding ownership and operation of the boat in the application was, therefore, false.

The misrepresentation was material as a matter of law. Under First Marine's underwriting guidelines, Ben was not eligible to be insured under the policy as an owner or operator because he had more than two minor traffic violations within three years and his driver's license had been suspended within three years. Thus, a reasonable person should expect that the fact that Ben was an owner and primary operator of the boat

---

**2.** *But see* §§ 376.580 and 376.800, RSMo 1994 (where misrepresentations made in obtaining life insurance or individual accident and sickness insurance are not deemed material unless the matter misrepresented shall have actually contributed to the contingency or event on which the

policy is to become due and payable). Likewise section 379.165, RSMo 1994, provides that warranties made in an application for insurance against loss by fire, tornado, or cyclone shall be construed as merely representations unless they are "material to the risk insured against."

would have influenced the insurance company to reject the risk. In fact, the company did reject Allen Faulconer's application to add Ben to his policy as an additional named insured based upon his ineligibility under the guidelines. That Ben's status as an owner/operator had no subsequent relation to the manner in which the event insured against occurred did not make it less material to the risk. The representation in the application regarding Ben's status being both false and material, First Marine was entitled to void the Yacht Policy.

■ The next issue on appeal is whether the policy was void as to Central Bank as loss payee. The Concealment, Fraud, or Misrepresentation Clause of the policy provided:

> If you, or any other insured under this policy, have intentionally concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct or made false statements relating to this insurance, whether before or after a loss, this policy is void as to you and any other insured.

■ "Insured person" was defined in the policy as "the person(s) named on the Declaration Page, person(s) having an interest by ownership or debt, a family member or any other person or organization using the insured watercraft with your permission, free of charge." Central Bank argues that as loss payee, it was not "any other insured" within the misrepresentation provision, and, therefore, the policy was not void as to it due to Mr. Faulconer's misrepresentations. Central Bank's argument is without merit. First, under the Concealment and Misrepresentation Clause, the policy was void "as to you [insured named on the declaration page] and any other insured" upon concealment or misrepresentation of any material fact by an insured. Central Bank was by definition an insured because it had an insurable interest in the boat by debt. Mr. Faulconer executed a security agreement giving the bank a lien on the boat in exchange for a loan to his son to purchase the boat.

■ Secondly, the loss payable clause of the policy did not provide Central Bank any protection against breach of the insurance contract by the insured. It stated, "If a loss payee is named in this policy, any loss payable under Coverage A [Watercraft and Equipment] shall be paid to the lien holder and you [the insured] as interests appear." This loss payable (or mortgage) clause was an open clause as distinguished from a union or standard clause. An open mortgage clause simply provides that proceeds shall be payable to the mortgagee or loss payee "as his interest may appear." *St. Louis County Nat'l Bank v. Maryland Cas. Co.,* 564 S.W.2d 920, 928 (Mo.App.1978); *General Motors Acceptance Corp. v. Western Fire Ins. Co.,* 457 S.W.2d 234, 236 (Mo.App.1970). It contains no other provision protecting the loss payee's rights against breach of the insurance contract by the insured. *Maryland Cas.,* 564 S.W.2d at 928. There is no privity of contract created between the insurer and mortgagee; the mortgagee is not a party to the contract but is an appointee to receive the proceeds in case of loss. *Id.; Western Fire Ins.,* 457 S.W.2d at 236. Under an open clause, the mortgagee's rights, as against the insurer, are dependent upon acts of omission and commission by the insured. *Maryland Cas.,* 564 S.W.2d at 928. Its rights will be defeated by a breach of the terms of the policy by the insured, by act or neglect, prior to the loss. *Id.; Western Fire Ins.,* 457 S.W.2d at 236. If the policy is rendered void or ceases to exist as to the insured, it is void as to the mortgagee as well. *Id.*

■ A union or standard clause also provides that in the case of loss, the policy is payable to the mortgagee. *Id.* Additionally, it affords protection for the mortgagee against default or breach by the insured. *Id.* The union mortgage clause operates as an independent contract of insurance between the mortgagee and the insurer, and the interest of the mortgagee as payee shall not be invalidated or affected by any act or omission of the insured. *Id.; Auto-Owners Mut. Ins. Co. v. Newman,* 851 S.W.2d 22, 26 (Mo.App. 1993); *Weekly,* 538 S.W.2d at 379. Under a union clause, fraud, false swearing, or other misconduct by the insured will not preclude an innocent mortgagee from recovering on the policy. *Weekly,* 538 S.W.2d at 379.

The mortgage clause in this case simply stated, "If a loss payee is named in this

policy, any loss payable under Coverage A [Watercraft and Equipment] shall be paid to the lien holder and you [the insured] as interests appear." The clause was devoid of additional language of protection for the mortgagee against default or breach by the insured. The policy was rendered void as to Mr. and Mrs. Faulconer as well as to Central Bank as the mortgagee. There being no genuine dispute as to the existence of each of the facts necessary to support the First Marine's affirmative defense that the Yacht Policy was void *ab initio* as to all insured including Central Bank, the trial court properly granted summary judgment in favor of First Marine.[3]

The judgment of the trial court is affirmed.

All concur.

---

3. In *Adams v. Columbia Mut. Ins. Co.*, —— S.W.2d ——, No. 54556, slip op., 1998 WL 526371 (Mo.App. W.D. filed August 25, 1998), this court reversed the trial court's summary judgment in favor of Columbia Mutual Insurance Company. The Adamses claimed that the company breached its contract in refusing to pay for repairs of a vehicle involved in an automobile accident. The application for insurance reported that the Adamses had been involved in two vehicular accidents within the previous five years. The insurance company asserted that the Adamses failed to report two additional accidents in December 1995, a fact not disputed, but the Adamses contested whether the failure was material. This court determined that the Adamses'

claims history included at-fault collisions, not-at-fault collisions, and noncollisions (comprehensive claims). An uncontradicted affidavit of an expert presented by the Adamses claimed that only claims creating liability to third parties are significant to insurance companies when considering insurance applications of persons seeking liability and collision insurance. Whether the misrepresentation contained within the insurance application form was material was, therefore, a question of fact. The summary judgment was reversed in *Adams*, and the case was remanded for further proceedings. In the instant case, the misrepresentation was material as a matter of law.